Thomas Mauriello (SBN: 144811)
MAURIELLO LAW FIRM
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Phone: (619) 940-1606
Fax: (949) 606-9690
Email: tomm@maurlaw.com

Brian M. Akkashian (*To Be Admitted Pro Hac Vice*)
Devin Bone *(To Be Admitted Pro Hac Vice*)
Paesano Akkashian Apkarian, PC
7457 Franklin Road, Suite 200
Bloomfield Hills, MI  48301
Phone: (248) 792-6886
Fax: (248) 792-6885
Email: bakkashian@paalawfirm.com
          dbone@paalawfirm.com

*Attorneys for Plaintiffs Salgado Family Trucking, Inc. and Bell Rose Capital, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| SALGADO FAMILY TRUCKING, INC., a California corporation, and BELL ROSE CAPITAL, INC., a Wyoming corporation,<br><br>              Plaintiffs,<br>v.<br><br>PAUL KHAN, an individual, JOEL TOMBRAN, an individual, STEPHEN TAUB, an individual, and BRANALEX FINANCIAL GROUP, INC., an Ontario corporation,<br><br>              Defendants. | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL ON ALL CAUSES OF ACTIONS SO TRIABLE |

Plaintiffs Salgado Family Trucking, Inc. ("Salgado") and Bell Rose Capital, Inc. ("Bell Rose," collectively with Salgado, "Plaintiffs"), by and through their attorneys herein, state for their Complaint against Defendants Paul Khan ("Khan"), Joel Tombran ("Tombran"), Stephen Taub ("Taub") and Branalex Financial Group, Inc. ("Branalex," collectively with Khan, Tombran and Taub, "Defendants"), as follows:

## THE PARTIES

1. Salgado is a California corporation with its principal place of business located in Adelanto, California.

2. Bell Rose is a Wyoming corporation with its principal place of business located in Adelanto, California.

3. On information and belief, Khan is a resident of Pickering, Ontario, Canada with an address at 518 Alder Court, Pickering, Ontario, L1V 4T1.

4. On information and belief, Tombran is a resident of Mississauga, Ontario, Canada with an address at 4240 Schneider Court, Mississauga, Ontario L5B 3N7.

5. On information and belief, Taub is a resident of Toronto, Ontario, Canada with an address at 133 Richmond Street W., Suite 310, Toronto, Ontario, M5E 2L3.

6. On information and belief, Branalex is an Ontario corporation with an address at 133 Richmond Street W., Suite 310, Toronto, Ontario, M5E 2L3, and which is owned, in whole or in part, by Taub.

///

## JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(2) because Plaintiffs and Defendants are citizens of different states or countries, all Plaintiffs being California residents and all Defendants being residents of Ontario, Canada, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney fees.

8. This Court has personal jurisdiction because Defendants have sufficient contacts with the state of California such that maintenance of this action does not offend traditional notions of fair play and substantial justice.

9. Specifically: (1) Khan entered into a contract with Salgado, a California corporation, to provide consulting services for Salgado and implement a going public strategy, (2) Defendants provided services to, and accepted compensation from, Salgado relating to Salgado's acquisition of Bell Rose, (3) Defendants were issued stock in Bell Rose, a company which maintains its primary address in Adelanto, California, though the validity of the stock issuance is in question and forms part of Plaintiffs' claims in this case.

10. Plaintiffs' claims arise out of Defendants' contacts with the state of California and Defendants have purposefully availed themselves of the protections of California law.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and/or (3).

/ / /

## STATEMENT OF FACTS

12. Founded in 2017, Salgado is a family-owned commercial trucking company based in Adelanto, California.

13. Salgado's Chief Executive Officer ("CEO") is Carlos Salgado ("Mr. Salgado").

14. In 2021, Salgado sought to "go public," but lacked the necessary knowledge or expertise to pursue this objective on its own.

15. In 2021, Mr. Salgado was introduced to Khan by a third party. Khan represented to Mr. Salgado that he had the necessary experience, expertise and contacts to help Salgado go public.

16. Based on Khan's representations, Salgado entered into a "Consulting and Services Agreement" with Khan on or about July 31, 2021 (the "Consulting Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**, pursuant to which Khan would receive 5% of the capital stock of Salgado in exchange for implementation of an appropriate going public strategy. Khan drafted the Consulting Agreement.

17. Khan subsequently received an issuance of 5% of the capital stock of Salgado to him.

18. Khan recommended a strategy whereby Khan would locate the controlling interest in a non-operating public company (a so-called "public shell" company), and Salgado would acquire the controlling interest in the company and

would then merge Salgado and the company and process a "company-related action" for the transaction to the extent required under Financial Institution Regulatory Authority ("FINRA") rules.  The surviving publicly traded company would either directly operate the Salgado trucking business as a subsidiary of the public company, or the publicly traded company would be the sole shareholder of Salgado as a wholly-owned subsidiary that would operate the trucking business.

19. Khan subsequently represented to Mr. Salgado that he could not locate any non-operating, publicly-traded companies that met their requirements and that he needed to bring in two of his associates, Tombran and Taub, to assist him.

20. Defendants eventually identified Bell Rose as a non-operating public company that might suit Salgado's needs. In November of 2021, Salgado acquired the majority and controlling interest in Bell Rose for $311,000.

21. Around the time of the acquisition, Khan represented to Mr. Salgado that the merger of Salgado and Bell Rose was completed merely by Salgado's acquisition of Bell Rose in November of 2021.

22. This representation was false.  Salgado and Bell Rose were not merged merely by virtue of the acquisition.  Defendants failed to take any action to complete the contemplated merger of Salgado and Bell Rose.  To date, no merger has occurred.

23. Later, in a March 7, 2022 email, Khan acknowledged that no merger had taken place, stating: "to be clear, Salgado Family is a wholly owned subsidiary of Bell Rose.  They exist as separate entities."  A true and correct copy of this email

is attached hereto as **Exhibit B**. While Khan in his email "came clean" in acknowledging that no merger had occurred, his statement that "Salgado . . . is a wholly owned subsidiary of Bell Rose" was incorrect. In fact, it was Salgado that had acquired Bell Rose, not the other way around.

24. Khan further misrepresented that, as a result of the merger, his shares of Salgado, which had been paid pursuant to the terms of the Consulting Agreement, were required to be converted to shares of Bell Rose.

25. In that regard, Khan prepared and had Mr. Salgado sign a one-page Amendment to Consulting and Services Agreement (the "Amendment"), the sole purported operative provision of which was to substitute Bell Rose as the "Client" in place of Salgado, as follows: "All references to the 'Client' being Salgado will be restated to indicate that the Client is now Bell Rose Capital Inc." The Amendment is between Khan and Salgado only. A true and correct copy of the Amendment is attached hereto as **Exhibit C**.

26. The Amendment is of no force and effect because: (1) Bell Rose is not a party to the Consulting Agreement or the Amendment, (2) Khan provided no consideration to Salgado for the Amendment, and (3) the substitution of Bell Rose for Salgado is premised on Khan's misrepresentations, both to Mr. Salgado directly, and also in the recitals of the Amendment itself, that Salgado had been acquired "by a publicly traded company, Bell Rose Capital Inc," see **Exhibit C,** when no such acquisition had occurred.

27. On or about November 30, 2021, Khan caused a press release to be issued to the public announcing that Bell Rose had acquired Salgado, when in fact no such acquisition had occurred. Rather, Salgado had acquired Bell Rose. A true and correct copy of the press release is attached hereto as **Exhibit D**.

28. Khan also misrepresented to Mr. Salgado that, as part of the non-existent merger, it was necessary for Salgado to issue Khan shares in Bell Rose.

29. In reasonable reliance on the misrepresentations of Khan, who had held himself out as an expert in corporate mergers and acquisitions and related matters, Mr. Salgado caused Bell Rose to issue Khan twenty-five million (25,000,000) common shares of Bell Rose stock and one million (1,000,000) preferred shares, for no consideration. This constituted 5% of each of Bell Rose' common and preferred stock, respectively.

30. Shortly after the closing of Salgado's acquisition of the controlling interest in Bell Rose, Khan also represented to Mr. Salgado that his associates, Tombran and Taub, had not been compensated for their role in Salgado's acquisition of Bell Rose and demanded that they be compensated through the issuance of Bell Rose Stock.

31. There was no contractual or other legal basis for Tombran and Taub to be issued any shares of Bell Rose Stock. Moreover, Khan's representations were false because, in fact, Tombran and Taub had received $30,000 of the $311,000 purchase price paid by Salgado for Bell Rose.

32. In reasonable reliance on Khan's misrepresentations, however, Mr. Salgado caused Bell Rose to issue each of Tombran and Taub (through his company Branalex), ten million (10,000,000) shares of Bell Rose common stock, for no consideration.

33. In addition, Khan misrepresented to Mr. Salgado that, as part of the non-existent merger, it was necessary to transfer the interests of numerous other Salgado shareholders to Bell Rose, which Salgado did, for no consideration.

34. The above-described issuances and transfers appear on a "Detailed Holder List" of Bell Rose's transfer agent, Pacific Stock Transfer ("PST"). A true and correct copy of this list is attached hereto as **Exhibit E**.

## COUNT I – FRAUD
### (By Plaintiffs Against Khan)

35. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

36. As more fully described above, Khan made numerous misrepresentations to Plaintiffs including, but not limited to, misrepresentations that: (1) Khan had the experience, expertise and ability to take Salgado public, (2) the merger of Salgado and Bell Rose was complete, (3) as part of the non-existent merger, it was necessary to convert Khan's shares of Salgado to shares of Bell Rose, (4) Tombran and Taub had not been compensated for their role in Salgado's acquisition of Bell Rose, and (5) as part of the non-existent merger, it was necessary

to transfer the interests of numerous other Salgado shareholders to Bell Rose, which Salgado did, for no consideration.

37. Khan knew or should have known that the representations were false when made.

38. Khan made the misrepresentations with the intent to defraud Plaintiffs and/or to induce Plaintiffs' reliance on the representations.

39. Plaintiffs justifiably relied on the misrepresentations and were damaged as a result.

40. Plaintiffs seek to rescind the issuances of Bell Rose stock to Defendants and to recover damages caused by Khan's fraud.

### COUNT II – NEGLIGENT MISREPRESENTATION
### (By Plaintiffs Against Khan)

41. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

42. As more fully described above, Khan made numerous misrepresentations to Plaintiffs including, but not limited to, misrepresentations that: (1) Khan had the experience, expertise and ability to take Salgado public, (2) the merger of Salgado and Bell Rose was complete, (3) as part of the non-existent merger, it was necessary to convert Khan's shares of Salgado to shares of Bell Rose, (4) Tombran and Taub had not been compensated for their role in Salgado's acquisition of Bell Rose, and (5) as part of the non-existent merger, it was necessary

to transfer the interests of numerous other Salgado shareholders to Bell Rose, which Salgado did, for no consideration.

43. Khan knew or should have known that the representations were false when made.

44. Plaintiffs justifiably relied on the misrepresentations and were damaged as a result.

45. Plaintiffs seek to rescind the issuances of Bell Rose stock to Defendants and to recover damages caused by Khan's fraud.

### COUNT III – BREACH OF FIDUCIARY DUTY
### (By Plaintiffs Against Khan)

46. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

47. Khan was duty bound to act with the utmost good faith for the benefit of Plaintiffs, Plaintiffs reposed confidence in the integrity of Khan, and Khan voluntarily accepted or assumed to accept such confidence.

48. As such, Khan owed Plaintiffs a fiduciary duty, including the duty to put Plaintiffs' interests ahead of his own.

49. Khan breached his fiduciary duty by: (1) misrepresenting his experience, expertise and ability to take Salgado public, (2) failing to effectuate the merger of Salgado and Bell Rose, yet misrepresenting that the merger was complete, verbally, in the Amendment, and in a press release, (3) falsely stating that Tombran and Taub had not been compensated for their role in Salgado's acquisition of Bell

Rose, when in fact they had been compensated, and (4) falsely stating that Khan's and others' Salgado stock had to be transferred and/or converted to Bell Rose stock as a result of the non-existent merger.

50. Plaintiffs have suffered damages as a result of Khan's breach of fiduciary duty.

### COUNT IV – FRAUD IN THE INDUCEMENT
### (By Salgado Against Khan)

51. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

52. Khan made numerous misrepresentations to induce Salgado to enter into the Amendment including, but not limited to, misrepresentations that: (1) the merger of Salgado and Bell Rose was complete, such misrepresentations being made verbally, in the Amendment, and in a press release, and (2) as part of the non-existent merger, Khan's shares of Salgado had to be converted to shares of Bell Rose.

53. Khan knew or should have known that the representations were false when made.

54. Khan made the misrepresentations with the intent to defraud Salgado and/or to induce Salgado reliance on the representations.

55. Salgado justifiably relied on the misrepresentations and was induced to enter into the Amendment based on the misrepresentations.

56. Salgado seeks to void the Amendment and to recover damages caused by Khan's fraudulent inducement.

### COUNT V – RESCISSION OF AMENDMENT
### FOR UNILATERAL MISTAKE
### (By Salgado against Khan)

57. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

58. Prior to execution of the Amendment, Khan represented to Salgado that the merger of Salgado into Bell Rose was complete, which representation specifically appears in the Amendment. *See* **Exhibit C**.

59. The merger was not complete and, to this date, has still not occurred.

60. Salgado entered into the Amendment based on its mistaken belief, as a result of Khan's misrepresentations and the language of the Amendment drafted by Khan, that the merger was complete and that it was necessary to convert Khan's Salgado stock to Bell Rose stock.

61. Khan was aware of Salgado's unilateral mistake and encouraged or fostered that mistake.

62. Salgado's unilateral mistake had a material effect upon the agreed exchange of performances that is adverse to Salgado.

63. Salgado seeks rescission of the Amendment and to recover damages caused by Khan's misconduct.

/ / /

/ / /

/ / /

**COUNT VI - RESCISSION OF AMENDMENT
PURSUANT TO Cal. Civ. Code §§ 1689 and 1692
(By Salgado against Khan)**

64.  Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

65.  Prior to execution of the Amendment, Khan represented to Salgado that the merger of Salgado into Bell Rose was complete and that representation specifically appears in the Amendment.  See **Exhibit C**.

66.  The merger was not complete and, to this date, has still not occurred.

67.  Salgado entered into the Amendment based on its mistaken belief, based on Khan's misrepresentations and the language of the Amendment drafted by Khan, that the merger was complete and that it was necessary to convert Khan's Salgado stock to Bell Rose stock.

68.  Salgado's consent to the Amendment was therefore as a result of mistake, fraud and undue influence, exercised by or with the connivance of Khan, and Salgado is therefore entitled to rescind the Amendment.  Cal. Civ. Code § 1689(b)(1).

69.  The Amendment also lacks consideration and Salgado is therefore entitled to rescind the Amendment.  Cal. Civ. Code § 1689(b)(2) and (3).

70.  Alternatively, to the extent completion of the merger was intended to constitute consideration for the Amendment, the merger was not completed, such

consideration is void and/or fails, and Salgado is therefore entitled to rescind the Amendment.  Cal. Civ. Code § 1689(b)(2) and (3).

71. Salgado seeks rescission of the Amendment and to recover damages caused by Khan's misconduct.

### COUNT VII – RESTITUTION
### (By Bell Rose against All Defendants)

72. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

73. Defendants are currently identified by PST as holders of millions of common and preferred shares in Bell Rose.

74. Defendants provided no consideration to Bell Rose for the shares, they were procured as a result of Khan's fraud, and Defendants were separately compensated for their roles in the acquisition of Bell Rose by Salgado.

75. Defendants have therefore been unjustly enriched at the expense of Bell Rose and it would be unjust for Defendants to retain the Bell Rose stock under the circumstances present in this case.

### COUNT VIII – DECLARATORY JUDGMENT
### (By Plaintiffs against All Defendants)

76. Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs as though fully restated herein.

77. Based on the allegations set forth above, Plaintiffs seek a declaratory judgment: (1) rescinding the purported issuances of Bell Rose stock to Defendants

and/or declaring that the purported issuances of Bell Rose stock to Defendants are null and void and of no force or effect, (2) declaring that any alleged issuance of Bell Rose stock to Defendants was, and is, null and void and of no force and effect, that Defendants do not own any Bell Rose stock and that the stock allegedly issue or transferred to Defendants continues to be held by Bell Rose, and (3) rescinding the Amendment and/or declaring the Amendment null and void and of no force or effect.

78.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court has authority to declare the rights and other legal relations of parties to a case of actual controversy.

79.  A case of actual controversy exists here because the dispute regarding the Bell Rose stock is definite and concrete, can be addressed by specific relief through a decree of a conclusive character, the parties have adverse legal interests, and such interests are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants and request the following specific relief:

    a. Rescission of the alleged issuances of Bell Rose stock to Defendants;

    b. Restitution by Defendants of the Bell Rose stock to Bell Rose;

    c. Rescission and/or voiding of the Amendment;

    d. A declaratory judgment:

        (1) rescinding the alleged issuances of Bell Rose stock to Defendants;

(2) declaring that any alleged issuance of Bell Rose stock to Defendants was, and is, null and void and of no force and effect, that Defendants do not own any Bell Rose stock, and that the stock allegedly issue or transferred to Defendants continues to be held by Bell Rose; and

(3) rescinding and/or voiding the Amendment;

e. Award of actual, consequential, exemplary, punitive, special and other damages sufficient to compensate Plaintiffs for all forms of economic and non-economic loss, plus interest, costs and attorney fees; and

f. Any other relief that the Court deems just, equitable or appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: June 22, 2022

/s/ Thomas D. Mauriello
Thomas Mauriello (SBN: 144811)
MAURIELLO LAW FIRM
1181 Puerta Del Sol #120
San Clemente, CA 92673
Phone: (949) 542-3555
Fax: (949) 606-9690
Email: tomm@maurlaw.com

Brian M. Akkashian (*To Be Admitted Pro Hac Vice*)
Devin Bone (*To Be Admitted Pro Hac Vice*)
Paesano Akkashian Apkarian, PC
7457 Franklin Road, Suite 200
Bloomfield Hills, MI  48301
Phone: (248) 792-6886
Fax: (248) 792-6885
Email: bakkashian@paalawfirm.com
           dbone@paalawfirm.com

*Attorneys for Plaintiffs Salgado Family Trucking, Inc. and Bell Rose Capital, Inc.*

# DECLARATION OF VENUE

I, Thomas D. Mauriello, declare as follows:

1. I am one of the counsel for Plaintiffs in this action and make this declaration to the best of my knowledge of the facts stated herein.

2. At all relevant times herein, Defendants Khan, Tombran, Taub, and Branalex were and are individuals and entities, respectively, that have engaged in business in the State of California and in this District.

3. Some of the transactions that form the basis of this action occurred, and at least a portion of Defendant's obligations or liabilities arose, in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was signed this 22nd day of June, 2022 at San Diego, California.

/s/ Thomas D. Mauriello